<u>NOT FOR PUBLICATION</u>

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| VON MORRIS CORPORATION, | : |
| Plaintiff, | : |
| v. | : Civil No. 06-CV-00228 (RBK) |
| DELTANA ENTERPRISES, INC., | : |
| Defendant. | : |

**O P I N I O N**

**Kugler**, United States District Judge:

Plaintiff Von Morris Corporation ("Von Morris"), a national manufacturer of decorative architectural hardware, seeks injunctive relief from Defendant Deltana Enterprises, Inc. ("Deltana"), an architectural hardware manufacturer, alleging trade dress infringement under 15 U.S.C. § 1125 ("Lanham Act"), and unfair competition. Von Morris claims trade dress protection for it's "Buckingham" style door lock trim and latch with traditional lever, escutcheon and accessories ("Buckingham Door Lock"). Defendant moves to dismiss Plaintiff's complaint for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, arguing that 1) the Buckingham Door Lock is not entitled to trade dress protection under the Lanham Act; 2) Von Morris's packaging and display are not

1

entitled to protection under the Lanham Act; and 3) the allegations in the Complaint do not support a "product line" trade dress claim. Plaintiff opposes the motion. For the reasons described below, the Court denies Defendant's Motion to Dismiss.

**I.      Background**

Plaintiff Von Morris is a national manufacturer of decorative hardware including, but not limited to, door hinges, door locks, lock trim, speciality locks, and related accessories. Plaintiff adheres to strict guidelines regarding its selection of raw materials for its products. At each stage of manufacturing, the hardware parts are checked to assure compliance with these standards. Plaintiff allegedly established a large consumer base at its own expense with respect to its decorative architectural hardware products. In addition, Plaintiff claims substantial goodwill associated with the Von Morris name. Plaintiff alleges that its products are designed in distinctive colonial and old-world styles, shapes, markings and other nonfunctional attributes.[1]

At issue in this case is Plaintiff's Buckingham Door Lock.[2] The product features a heavy, solid brass knob with a diameter of 1.75 inches for use on the exterior component of a door. A decorative and nonfunctional oval-shaped turn piece is designed for use on the interior side of the door. Among numerous forms of advertising and promotion, the Buckingham Door Lock is featured at trade shows and distributor show rooms through a distinctive and nonfunctional wooden display. Plaintiff alleges that as a result of extensive advertising efforts, the unique

---

[1] The facts relied on by the Court derive from Plaintiff's allegations set forth in the Complaint and must be taken as true pursuant to Rule 12 of the Federal Rules of Civil Procedure.

[2] Although Defendant argues that Plaintiff is seeks trade dress protection for an entire product line, Plaintiff clarified in its Memorandum in Opposition to Defendant's Motion to Dismiss that the Buckingham Door Lock is the *only* product for which it seeks trade dress protection. (Pl. Opp. Br. at 3).

character of the Buckingham Door Lock, along with its design, appearance, and display packaging are firmly fixed in the minds of the public and are widely identified as Von Morris hardware.

Defendant Deltana manufactures decorative architectural hardware, including door knobs, door locks, door hinges and related accessories. Specifically, Deltana produced a hardware product identified as "Screen Door Latch, Mortise, Solid Brass" that features a brass knob for use on the exterior portion of a door, and a brass, oval shaped turn piece for use on the interior component of a door. Von Morris alleges that Deltana's product design is identical to its Buckingham Door Lock. Von Morris further alleges that the decorative bugle-shaped lever and escutcheon of Deltana's product are indistinguishable from those used with the Buckingham Door Lock.[3]

Von Morris contends that due to the similarity of the two products described above, there has been substantial consumer confusion in that customers who purchase Deltana's door lock product and accessories assume that the product is manufactured and produced by Von Morris. Von Morris claims that such confusion damages its goodwill and reputation and confuses the consuming public.

On January 18, 2006, Von Morris filed this Complaint in United States District Court, District of New Jersey, against Deltana, alleging unfair competition and infringement of unregistered trade dress under § 43(a) of the Lanham Act. 15 U.S.C. § 1125(a). On March 29,

---

[3] Von Morris further alleges that Deltana duplicated the decorative and nonfunctional aspects of the Buckingham Door Lock's display. Von Morris clarified that does not seek individual trade dress protection for the Buckingham Door Lock display, but rather seeks protection for the entire product, including the display.

3

2006, Deltana moved to dismiss Plaintiff's claims, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, arguing that Von Morris's Buckingham Door Lock design is generic and thus not entitled to trade dress protection; the packaging and display are not protected under the Lanham Act because they cannot possibly cause customer confusion; and that the allegations set forth in the Complaint cannot support a "product line" trade dress claim.

## II. Standard of Review

In reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept Plaintiff's allegations along with all reasonable inferences that may be drawn from them as true. Doe v. Delie, 257 F.3d 309, 313 (3d Cir. 2001) (citing Piecknick v. Commonwealth of Pennsylvania, 36 F.3d 1250, 1255 (3d Cir. 1994)). The Court may dismiss the Complaint only if Plaintiff can prove no set of facts that would entitle them to relief. Burstein v. Retirement Account Plan for Employees of Allegheny Health Educ. & Research Found., 334 F.3d 365, 374 (3d Cir. 2003) (citation omitted).

## III. Discussion

The Lanham Act provides for the registration of trademarks, which it defines in § 45 to include "any word, name, symbol, or device, or any combination thereof [used or intended to be used] to identify and distinguish [a producer's] goods . . . from those manufactured or sold by others and to indicate the source of the goods . . . ." 15 U.S.C. § 1127. Registration of a mark under § 2 of the Lanham Act, 15 U.S.C. § 1052, inter alia, ordinarily entitles the owner to a presumption that the mark is valid. 15 U.S.C. § 1057(b). In addition to protecting registered marks, the Lanham Act gives a producer a cause of action for the use by any person of "any word, term, name, symbol, or device, or any combination thereof . . . which . . . is likely to cause

4

confusion . . . as to the origin, sponsorship, or approval of his or her goods . . . ." 15 U.S.C § 1125.

The Lanham Act's protection is not limited to word marks and has been extended to "trade dress," a category that originally included only the packaging or "dressing" of a product, but now encompasses the design of a product. Wal-Mart Stores, Inc. v. Samara Bros., 529 U.S. 205 (2000). In a cause of action alleging trade dress infringement, the text of § 43(a) requires that a producer show that the allegedly infringing feature is not "functional" and is likely to cause confusion with the product for which protection is sought. 15 U.S.C. § 1125(a)(1)(A). A product feature is functional and cannot serve as a trademark "if it is essential to the use or purpose of the article or it affects the cost or quality of the article." Qualitex Co. v. Jacobson Prod. Co., 514 U.S. 159, 165 (1995).

In addition to the textual requirements of § 43(a), courts universally require that a producer show that its trade dress is distinctive, since without distinctiveness the trade dress could not cause confusion as required by the section. Samara Bros., 529 U.S. at 210. Distinctiveness is an express prerequisite for registration of trade dress under § 2 of the Lanham Act, and "the general principles qualifying a mark of registration under § 2 of the Lanham Act are for the most part applicable in determining whether an unregistered mark is entitled to protection under § 43(a)." Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 768 (1992).

Courts have held that a mark can be distinctive in one of two ways. First, a mark is inherently distinctive if "its intrinsic nature serves to identify a particular source." Samara Bros., 529 U.S. at 210. In the context of word marks, courts apply a well-established test in which word marks that are "arbitrary," "fanciful," or "suggestive" are held to be inherently distinctive.

See Abercrombie & Fitch Co. v. Hunting World, Inc., 537 F.2d 4, 10-11 (2d Cir. 1976). Second, a mark acquires distinctiveness, even if it is not inherently distinctive, if it has "secondary meaning,"[4] which occurs when, "in the minds of the public, the primary significance of a mark is to identify the source of the product rather than the product itself." Inwood Lab., Inc. v. Ives Lab., Inc, 456 U.S. 844, 851 (1982). Factors relevant to establishing secondary meaning include: 1) plaintiff's advertising expenditures, measured primarily with regard to those advertisements which highlight the supposedly distinctive, identifying feature; 2) consumer surveys linking distinctive product configuration to a particular, single source, although identity of source need not be known; and 3) length and exclusivity of use. Duraco Products, Inc. v. Joy Plastic Enter., Ltd., 40 F.3d 1431 (3d Cir. 1994) (discussing secondary meaning in the context of product configuration).

In Duraco, the Third Circuit analyzed the applicability of § 43(a) of the Lanham Act to product configuration or product design. Id. The court held that such trade dress is entitled to Lanham Act protection and set forth a test for establishing inherent distinctiveness.[5] Id. at 1435.

---

[4] The phrase "secondary meaning" originally arose in the context of word marks, where it served to distinguish the source-identifying meaning from the ordinary, or "primary" meaning of the word. "Secondary meaning" has since come to refer to the acquired, source-identifying meaning of a non-word mark as well. Samara Bros., 529 U.S. at 211.

[5] As Plaintiff correctly points out, the Third Circuit rejected the use of the Abercrombie classification taxonomy in determining whether distinctiveness has been established. Duraco, 40 F.3d at 1440 ("But we do not think it helpful or proper to transplant the categorical distinctiveness inquiry developed for trademarks to product configurations, where the alleged trade dress lies in the product itself."). Under the taxonomy classification set forth in Abercrombie, generic marks are never entitled to Lanham Act Protection. Abercrombie, 537 F.2d at 9. Plaintiff argues that due to the Third Circuit's rejection of this classification scheme, there is no "genericness" standard to product configuration cases in the Third Circuit. (Pl. Br. at 9). This proposition is overreaching and is not fully supported by the case law. Further, it is beyond the issues that the Court will address in ruling on this motion, since secondary meaning is the

However, the Supreme Court undermined this test in Samara Bros., 529 U.S. 205 (2000), and held that product design can never be inherently distinctive. The Court concluded that product design is only protected by the Lanham Act if secondary meaning is established. Id. at 216. The Court reasoned that with regard to product design, consumer predisposition to equate the feature with the source does not exist. Id. at 212. The Court further explained that "consumers are aware of the reality that, almost invariably, even the most unusual of product designs–such as a cocktail shaker shaped like a penguin–is intended not to identify the source, but to render the product itself more useful and more appealing." Id. Thus, based on Samara Bros., and all cases thereafter, it is clear that trade dress protection under § 43(a) of the Lanham Act will only be extended to product configuration or design if *secondary meaning* is established.

    Plaintiff alleges that Defendant infringed its trade dress, specifically its product design, by producing a hardware product that employs the same design and configuration as its Buckingham Door Lock. Plaintiff's Complaint sets forth the detailed dimensions of the product's design and explains the advertising tactics Von Morris used to market its product to the consuming public. Plaintiff asserts that the Buckingham Door Lock, along with its design, appearance, and display packaging, have become "firmly fixed in the minds of the public and has become widely known as identifying Von Morris hardware." (Pl. Compl. at 3-4). Through this assertion, Plaintiff pled secondary meaning as required in product design cases, which mandates a showing that in the minds of the consuming public, the primary significance of a mark is to identify the source of a product and not the product itself. Inwood Lab., Inc. v. Ives Lab., Inc, 456 U.S. 844, 851 (1982).

    Defendant's primary contention is that the Von Morris door lock product constitutes

---

hallmark of this analysis.

generic trade dress and is therefore not entitled to Lanham Act protection. Defendant argues that Von Morris conceded the generic nature of the Buckingham Door Lock by repeatedly referring to it as "traditional," "colonial," and "old world." (Def. Br. at 9). However, Plaintiff clarified in its response that it does not seek Lanham Act protection over the words describing the Buckingham Door Lock, but only over the product's features and configuration. Regardless, Plaintiff correctly notes that many circuits have held that the issue of "genericness" is a question of fact that should not be determined on a motion to dismiss. See Courtney Commc'n Corp. v. Hall, 334 F.3d 210 (2d Cir. 2003); Stulbarg Int'l Sales, Co., Inc. v. John D. Brush & Co., Inc., 240 F.3d 832 (9th Cir. 2002); Boston Beer Co. v. Slesar Bros. Brewing Co., 9 F.3d 175 (1st Cir. 1993).

Following the Supreme Court's holding in Samara Bros., it is apparent that Lanham Act protection will only be extended to product design if secondary meaning is established. Thus, for the purposes of this motion, the primary issue is whether Plaintiff pled facts sufficient to establish secondary meaning. The Court must accept Plaintiff's allegations, along with all reasonable inferences, as true pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, and only grant dismissal if Plaintiffs can prove no set of facts that would entitle them to relief. Plaintiff set forth facts, that if proven to be true, would entitle them to relief under § 43(a) of the Lanham Act. Specifically, if Plaintiff can demonstrate that in the minds of the consuming public, the primary significance of the design of the Buckingham Door Lock is to identify the Von Morris Company, they could be entitled to relief, so long as the other requirements of the statute were satisfied. At this early stage, Plaintiff's claim that the Buckingham Door Lock, along with its design, appearance, and display packaging, have become "firmly fixed in the minds of the public and have become widely known as identifying Von Morris hardware" is sufficient to meet

this burden.

**IV. Conclusion**

       For the foregoing reasons, the Court denies Defendant's motion to dismiss Plaintiff's Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.


Dated: 11/15/2006                                          s/Robert B. Kugler
                                                                   ROBERT B. KUGLER
                                                                   United States District Judge